UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SHAWN GREEN,

                Petitioner,

V.

DANIEL SENKOWSKI,[1]

                Respondent.

**REPORT AND RECOMMENDATION**

01-CV-886

---

## I. INTRODUCTION

Petitioner, Shawn Green, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is presently an inmate at the Great Meadow Correctional Facility. In 1999, he was penalized after a prison disciplinary hearing while he was incarcerated at the Clinton Correctional Facility. He contends that his punishment was imposed in violation of his constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 11).

---

[1] Daniel Senkowski is the named respondent in this action. However, the correct respondent in a habeas corpus petition is the superintendent of the facility where the petitioner is being held. 28 U.S.C. § 2243. Given that Petitioner is presently incarcerated in the Great Meadow Correctional Facility, the correct Respondent is George Duncan, the Superintendent of the Great Meadow Correctional Facility. Id. In light of Petitioner's *pro se* status, the fact that this will in no way prejudice Respondent, and in the interests of court efficiency, this Court will deem the petition amended to change the name of Respondent to George Duncan.
    The Clerk of the Court is directed to terminate Daniel Senkowski as Respondent, add George Duncan, Superintendent of the Great Meadow Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

## II. BACKGROUND

**A.    Facts**

The following factual summary is derived from the prison records attached to Respondent's Answer.[2] On April 16, 1999, a misbehavior report was filed against Petitioner, then an inmate at the Clinton Correctional Facility. The report charged him with facility correspondence violations. (T at 2). The misbehavior report alleged that Petitioner sent a letter to Dallas Brooks ("Brooks"), an inmate at the Coxsackie Correctional Facility, that was returned to Petitioner for lack of approval. (Id.). The report concluded that Petitioner had previously sent the letter to a third party to mail for him in an attempt to circumvent a prison policy requiring inmate-to-inmate mail pre-approval. (Id.). According to the misbehavior report, the Clinton Correctional Facility had no authorization for correspondence between Petitioner and Brooks. (Id.). Petitioner was served with the inmate misbehavior report on April 17, 1999. (Id. at 1).

A Tier II[3] prison disciplinary hearing commenced on April 27, 1999. (Id.). Lieutenant

---

[2] Respondent's Memorandum of Law refers to the disciplinary hearing transcript and cites to "Answer, Exhibit A, p.2," leading the reader to believe that the hearing transcript is attached to Docket No. 7, Respondent's Answer in this case. However, the hearing transcript is actually attached to Respondent's Answer in Petitioner's Article 78 proceeding at the state court level. For purposes of clarification, the hearing transcript can be found as part of the Respondent's Answer in the state court records in this proceeding. Therefore, references proceeded by "T" are to the transcript pages of Petitioner's disciplinary hearing held on April 27, 1999.

[3] Inmates in New York correctional facilities are subject to three levels of disciplinary hearings for violating prison rules, pursuant to regulations codified in the Official Compilation of Codes, Rules, and Regulations of the State of New York. See N.Y. Comp Codes R. & Regs. tit. 7, §§ 270.2, 270.3. Tier I hearings address the least serious offenses, which can be punished by loss of privileges such as recreation and commissary purchases. See id. at § 252.5. Tier II hearings address more serious infractions, for which inmates are subject to up to 30 days of confinement in a Special Housing Unit (SHU). See id. at § 253.7. The most serious violations are the subject of Tier III hearings and may result in SHU confinement for the remainder of the inmate's prison time, as well as forfeiture of "good- time" credits. See

2

Armitage was designated as the hearing officer. (Id. at p. 1). Petitioner pled not guilty to the charge of facility correspondence violations. (Id.). During the hearing, Petitioner called Robert Cox ("Cox") to testify. (Id. at 3). Cox is a supervisor in the mail room and authored the misbehavior report against Petitioner. (Id. at 4). Petitioner then requested that "Mrs. Worley," the prison librarian, be called as a witness. (Id. at 22). The hearing officer denied that request, stating that the librarian had no knowledge of this misbehavior report. (Id. at 26, 41).

The hearing officer found Petitioner guilty of violating facility correspondence procedures. (Id. at 42). The hearing officer cited the misbehavior report, the testimony of Robert Cox, as well as Petitioner's testimony. (Id. ). Petitioner was given the penalty of 30 days "keep lock" confinement, with loss of telephone, packages, and commissary. (Id.). Petitioner did not lose any "good-time" credits as part of the disciplinary hearing determination. (Id.). Petitioner filed his administrative appeal on April 29, 1999.[4] On April 30, 1999, the disciplinary hearing determination was affirmed.

**B.    State Appellate Proceedings**

Petitioner, acting *pro se*, commenced an Article 78 proceeding in the Supreme Court of the State of New York, County of Clinton, seeking to reverse and expunge the disciplinary determination. The County Court transferred the Article 78 Petition to the Appellate Division,

---

id. at § 254.7; McEachin v. McGuinnis, 357 F.3d 197, 199 n. 1 (2d Cir. 2004).

[4]It should be noted that the state court record in this case is not well organized or labeled. This may be a function of the age of this file and the number of times it has been transferred. However, this Court notes that it has reviewed a number of other files of this age and has never had the problem of finding relevant documents and being able to clearly cite to those documents in the record. For purposes of clarification, Petitioner's administrative appeal and Article 78 Petition can be found amongst the state court records.

Third Department for determination.  Green v. Senkowski, 702 N.Y.S.2d 712 (3d Dep't 2000).

In a decision issued on February 3, 2000, the Appellate Division confirmed the disciplinary determination and denied the petition.  Id.  The Appellate Division found that "[i]n light of the misbehavior report, authored by the correctional facility mail clerk, as well as petitioner's own testimony and the handwriting samples compared by the Hearing Officer, we conclude that there is substantial evidence to support the determination of guilt."  Id.  The appellate court went on to state that "[t]o the extent that petitioner's remaining contentions have been preserved for our review, we find them to be without merit."  Id.

### C.     Federal Habeas Corpus Proceedings

Petitioner commenced this action on June 4, 2001, by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).  Petitioner later amended his Petition on August 13, 2001.  (Docket No. 3).  Thereafter, the Respondent filed submissions outlining his position.  (Docket No. 7 & 8).

### III. DISCUSSION

### A.     Federal Habeas Corpus Standard

To obtain a federal writ of habeas corpus, a state prisoner must show that he or she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254.  Habeas corpus is appropriate only for challenges to the "fact or duration" of confinement.  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Muhammad v. Close,  540 U.S.

749,751(2004); Peralta v. Vasquez, 467 F.3d 98, 102 (2d Cir. 2006); see also, Jenkins v. Haubert, 179 F.3d 19, 22 (2d Cir. 1999)(discussing habeas relief for prisoners under Preiser.).

The Fourteenth Amendment Due Process Clause protections apply to determinations affecting duration of confinement because an inmate's liberty interest is at risk. Wolff v. McDonnell, 418 U.S. 539 (1974). A disciplinary conviction that results in the loss of good-time credits is equivalent to a loss of a "shortened prison sentence." Wolff, 418 U.S. at 556-57. Therefore, habeas corpus is the appropriate vehicle through which to challenge a disciplinary proceeding that results in the loss of good-time credits. See Preiser, 411 U.S. at 500 (holding that § 2254 is the "sole remedy for a prisoner's challenge to revocation of good-time credits"). However, these protections do not apply to mere changes in the conditions of confinement. Wolff, 418 U.S. at 557.

**B.   Petitioner's Claims**

Petitioner asserts one claim in support of his habeas corpus Petition. He asserts that the hearing officer suppressed relevant evidence at his prison disciplinary proceeding by refusing to permit the testimony of the prison librarian. Respondent argues that this Petition should be dismissed because Petitioner's claim is moot because Petitioner has completed his 30 day penalty.

**Habeas Corpus Relief**

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983." Muhammad, 540 U.S. at 751.

5

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); requests for relief turning on circumstances of confinement may be presented in a § 1983 action." (Id. at 751).

In, Preiser, the Supreme Court established that habeas corpus is the exclusive remedy for a state prisoner seeking an early release. 411 U.S. 475. Preiser dealt with state prisoners who had been deprived of good-time credits as a result of internal disciplinary proceedings who brought an action under § 1983. Id. They were seeking injunctive relief to require the prison to restore their good-time credits, and, thereby gain them immediate release. Id. at 476. The Supreme Court held that the prisoners could not bring their action under § 1983 because when a prisoner is challenging "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id. at 500.

As the Second Circuit has noted, "[c]onversely, Preiser concluded that 'a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.'" Peralta, 467 F.3d at 102 (citing Preiser, 411 U.S. at 499).

In the present case, Petitioner has not challenged the fact or duration of his physical imprisonment. Preiser, 411 U.S. at 500. In fact, the prison disciplinary hearing determination did not impose a sanction with respect to Petitioner's "good- time" credits. (T at 42). Petitioner was given the penalty of 30 days keep lock confinement with loss of telephone, packages, and commissary. (Id.). As such, Petitioner's penalty dealt with the circumstances

6

and conditions of his confinement, and not with the duration thereof.  See Muhammad, 540 U.S. 751; Preiser, 411 U.S.499; Peralta, 467 F.3d at 102.  Because Petitioner's claim is therefore not cognizable on habeas review, it is unnecessary to address Petitioner's assignment of error that the hearing officer improperly suppressed evidence by refusing to permit the testimony of the prison librarian.

Petitioner's federal "avenue for relief" would be to file a complaint pursuant to 42 U.S.C. § 1983.  Accordingly, this Petition for habeas relief should be DISMISSED.

### IV. CONCLUSION

Based on the foregoing, it is recommended that the Petition be DISMISSED.  Further, as the court finds there is no substantial question presented for appellate review, it is recommended that a certificate of appealability not issue.  28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED: February 16, 2007

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 16, 2007

Victor E. Bianchini
United States Magistrate Judge